## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICKLAUS ROHDE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF OKLAHOMA *ex rel.* | ) |
| THE BOARD OF REGENTS OF | )   **Case No. CIV-20-1243-G** |
| THE UNIVERSITY OF CENTRAL | ) |
| OKLAHOMA, a/k/a THE UNIVERSITY | ) |
| OF CENTRAL OKLAHOMA, an | ) |
| Oklahoma higher education institution, | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Plaintiff Nicklaus Rohde has brought this lawsuit against Defendant State of Oklahoma *ex rel.* The Board of Regents of the University of Central Oklahoma ("Board") and Defendants Amy Johnson and Amanda Horton (the "Individual Defendants"), alleging violations of Plaintiff's federal and state-law rights as a student at the University of Central Oklahoma ("UCO" or "the University"). *See* Am. Compl. (Doc. No. 7). Now before the Court is the Motion to Dismiss (Doc. No. 9), filed jointly by Defendants, and Plaintiff's Response (Doc. No. 10).

### SUMMARY OF THE PLEADINGS

In his Amended Complaint, Plaintiff alleges that Defendants violated his rights in connection with his enrollment and studies as a student at UCO. Plaintiff alleges that he suffers from ADHD, Asperger Syndrome, OCD, and a form of Tourette's and takes medication to treat one or more of these medical conditions. *See* Am. Compl. ¶ 10.

Plaintiff states that he first enrolled at UCO for the fall semester of 2016, after transferring from Oklahoma State University.  *See id.* ¶ 11.  Plaintiff states that, as part of his transfer to UCO, he and his father communicated with UCO regarding Plaintiff's medical conditions, including providing documentation and records to UCO's Disability Support Services (DSS) office.  *See id.*  Plaintiff alleges DSS issued an Accommodation Letter to Plaintiff with seven accommodations, advising professors to provide Plaintiff with copies of lecture notes, class audio recordings, and extended time for exams and quizzes, as well as other unspecified accommodations.  *See id.* ¶ 12.

Plaintiff alleges that he intended to enter UCO's graphic design program to pursue a career in graphic design.  *See id.* ¶ 13.  Plaintiff states that he took graphic design classes at UCO from fall 2017 to spring 2019, maintaining a GPA above the minimum 2.75 GPA required by the graphic design program.  *See id.*  Plaintiff alleges that he made the Dean's honor roll multiple times and was invited to join the Sigma Alpha Pi National Society of Leadership and Success at UCO.  *See id.* ¶ 18.

Plaintiff alleges that "many professors in the Graphic Design program were unwilling to implement University mandated disability accommodations."  *Id.* ¶ 14.  Specifically, Plaintiff alleges that Defendant Horton, a professor in the graphic design program, refused to provide class notes and lecture slides, and otherwise generally did not comply with Plaintiff's Accommodation Letter.  *See id.*  Plaintiff alleges that Defendant Horton told him the accommodations in the Accommodations Letter did not apply to the UCO graphic design program, and that Defendant Horton told Plaintiff, "here in graphic design, you are not going to be able to use this," referring to the Accommodation Letter,

and that accommodations do not help "for deadlines in graphic design."  *Id.*  Plaintiff alleges that he received a B grade in Defendant Horton's fall 2018 class and a C grade in Defendant Horton's spring 2019 class.  *See id.* ¶¶ 14-15.

Plaintiff states that he completed and submitted in spring 2019 an application and portfolio of his graphic design projects for advancement to Graphic Design II, which is required for a Graphic Design major and degree.  *See id.* ¶ 16.  Plaintiff alleges that Defendant Johnson, the Graphic Design Department Chair, signed a form rejecting Plaintiff's Graphic Design II application.  *See id.* ¶ 17.  The form reflected a "Permission Not Given" score and stated that "the work does not show enough evidence of strong design/illustration skills to warrant your success in the design industry."  *See id.*  Plaintiff alleges that Defendant Johnson stated that Plaintiff's application score reflected a department committee review of Plaintiff's performance and work and that Defendant Johnson concluded that Plaintiff "was not good at ambiguity" and "would not succeed in meeting future business clients' creative needs."  *Id.* ¶¶ 18, 21.

On May 1, 2019, Plaintiff and his father met with Defendant Johnson and Pam Platz from UCO Student Services.  *Id.* ¶ 22.  Plaintiff alleges that Platz stated that it was "very rare" for graphic design applicants to receive a "Permission Not Given" score, rather than a "Permission Not Given at This Time" score, which would have allowed Plaintiff to engage in additional efforts and submit another application for review.  *Id.* ¶¶ 20, 22.  Plaintiff alleges that Plaintiff Johnson stated that there was "really no appeal" of the decision on Plaintiff's application.  *See id.* ¶ 22.

After his graphic design application was rejected, Plaintiff states that he "was forced to major in General Studies" and continued to take classes at UCO. *See id.* ¶ 24.

Plaintiff alleges that his tuition payments spent on graphic design classes are wasted as result of Defendants' actions and that his future graphic design career interests will be harmed by the stigma associated with failure to complete UCO's graphic design program. *See id.* ¶ 23.

Plaintiff brings four causes of action. First, Plaintiff alleges that Defendant Board and Defendants Horton and Johnson, in their official capacities, subjected Plaintiff to improper discrimination in violation of the Americans with Disabilities Act ("ADA")[1] and the Rehabilitation Act.[2] *See id.* ¶¶ 29-36. Second, Plaintiff alleges pursuant to 42 U.S.C. § 1983 that Defendants Horton and Johnson, in their individual and official capacities, violated Plaintiff's substantive due process rights under the Fourteenth Amendment of the United States Constitution. *See id.* ¶¶ 37-51. Third, Plaintiff alleges a breach of the express and/or implied contractual relationship that existed between Defendant Board and Plaintiff by virtue of his enrollment at UCO. *See id.* ¶¶ 52-56. Lastly, Plaintiff alleges that Defendants Horton and Johnson, in their individual capacities, tortiously interfered with a contractual relationship between Plaintiff and Defendant Board. *See id.* ¶¶ 57-59. In this

---

[1] Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[2] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination by reason of disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

lawsuit, Plaintiff seeks actual and compensatory damages, pre- and post-judgment interest on damages, punitive damages against Defendants Horton and Johnson, and costs and attorney's fees. *See id.* at 18.

DISCUSSION

I.   *Applicable Standards*

Defendants assert that Plaintiff's allegations reflect that the Court lacks subject-matter jurisdiction to hear certain of Plaintiff's claims and, therefore, such claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1226 (10th Cir. 2010) (noting that "a claim of sovereign immunity raises a jurisdictional defense" (internal quotation marks omitted)). "A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true." *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009); *see also E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001).

Defendants also seek dismissal of certain claims for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful

in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).   Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II.   Disability Discrimination Claims

Defendant Board and the Individual Defendants, in their official capacities, move to dismiss Plaintiff's ADA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) based on Eleventh Amendment immunity,[3] and move to dismiss Plaintiffs' ADA and Rehabilitation Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible discrimination claim pursuant to those statutes.

Under the doctrine of sovereign immunity, embodied in the Eleventh Amendment, "States may not be sued by private individuals in federal court" unless the states "consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Muscogee (Creek) Nation*, 611 F.3d at 1227 (internal

---

[3] Defendants concede that this Court has jurisdiction over Plaintiff's Rehabilitation Act claim.  *See* Defs.' Mot. at 5; *see Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015).

quotation marks omitted).[4]  "Both the Tenth Circuit and the Oklahoma Supreme Court have specifically determined that the boards of regents of Oklahoma universities are state entities immune from lawsuit under the Eleventh Amendment."  *Englehart v. Bd. of Regents for Okla. Agric. & Mech. Colls.*, No. 15-CV-138, 2016 WL 3645193, at *4 (N.D. Okla. June 30, 2016).[5]

"Oklahoma has not consented to be sued in federal court," and so the Court examines whether there has been a valid abrogation of sovereign immunity.  *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012).  Title II of the ADA incorporates by reference section 505 of the Rehabilitation Act, codified at 29 U.S.C. § 794a, which "authorizes suits by private citizens for money damages against public entities that violate § 12132."  *United States v. Georgia*, 546 U.S. 151, 154 (2006).  The ADA further provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202 (footnote omitted).

---

[4] Pursuant to *Ex parte Young*, 209 U.S. 123 (1908)—inapplicable here—a plaintiff also can avoid the Eleventh Amendment bar by suing state officers in their official capacities for prospective injunctive relief.  *See Muscogee (Creek) Nation*, 611 F.3d at 1232.

[5] Suits against employees in their official capacities operate as a suit against the employer itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation and internal quotation marks omitted)).  The disability discrimination claims against Defendants Johnson and Horton in their official capacities are therefore dismissed as duplicative.

The Supreme Court recognized the latter statement "as an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154. In *Georgia*, the Supreme Court explained that Congress doubtless has the power under section 5 of the Fourteenth Amendment to enforce that Amendment "by creating private remedies against the States for *actual* violations of those provisions." *Id.* at 158. "This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States." *Id.* at 158-59. "Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159.

In *Georgia*, the Supreme Court established a three-step analysis for district courts to determine whether Title II of the ADA validly abrogated States' immunity regarding specific claims in individual cases. *See id.*; *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012). The Court must determine, on a claim-by-claim basis: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. The Court addresses the first step of the *Georgia* analysis at the outset, as a finding of allegations sufficient to state a claim for misconduct under Title II of the ADA is necessary to reach the remaining steps. *See id.*; *cf. Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007) ("If there is no violation of Title II, then the *Georgia*

analysis ends and the claim is dismissed on the ground that plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity.").

    A. <u>Whether the Alleged Conduct States a Violation of Title II of the ADA and the Rehabilitation Act</u>

Because the Rehabilitation Act and the ADA are "closely linked" to each other, the Court evaluates Plaintiff's Title II ADA claims together with his Rehabilitation Act claims. *Levy*, 789 F.3d at 1170; *see Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (noting that the Rehabilitation Act and Title II "involve the same substantive standards"); *Rainwater v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, No. CIV-19-382-R, 2020 WL 499698, at *2 (W.D. Okla. Jan. 30, 2020) ("Title II of the ADA and § 504 of the Rehabilitation Act are coextensive with one another . . . .").

To state a claim under Title II, Plaintiff must plausibly allege that: "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *see* 42 U.S.C. § 12132. To state a claim under the Rehabilitation Act, Plaintiff must plausibly allege that: (1) he is an individual with a disability; (2) he would be "otherwise qualified" to participate in the relevant program or activity; (3) the program or activity receives federal financial assistance; and (4) the program or activity has excluded, denied benefits to, or

discriminated against Plaintiff "solely by reason of" his disability. *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004); 29 U.S.C. § 794(a)-(b).

Defendants argue for dismissal of Plaintiff's Title II and Rehabilitation claims on the basis that Plaintiff has failed to allege facts sufficient to show that he was denied benefits to or excluded from UCO's graphic design program because of his disability.[6]  In response, Plaintiff relies heavily on *Gossett v. Oklahoma ex rel. Board of Regents for Langston University*, 245 F.3d 1172 (10th Cir. 2001).  *Gossett*, however, is a case involving Title IX and constitutional due process claims, and it therefore has no bearing on the merits of Plaintiff's ADA and Rehabilitation Act statutory claims.  Plaintiff likewise dedicates much of his argument to the proposition that his 42 U.S.C. § 1983 claims are not precluded by his ADA and Rehabilitation Act claims, citing *Polson v. Davis*, 895 F. 2d 705, 710 (10th Cir. 1990), and *Rainwater*, 2020 WL 499698, at *2.  Defendants did not raise this argument as a ground for dismissal, and the Court need not address it here.

Plaintiff's response to the merits of Defendants' argument that Plaintiff fails to state an ADA or Rehabilitation Act claim is contained in a single paragraph in which Plaintiff asserts that he has suffered "unlawful disability discrimination that violated his constitutional rights of due process" based on allegations that one professor did not fully comply with and spoke dismissively of the University's Accommodation Letter and that

---

[6] Defendants do not contest that Plaintiff has adequately pled that he is disabled under Title II and the Rehabilitation Act.  *See Nielson v. Moroni Feed Co.*, 162 F.3d 604, 607-08 (10th Cir. 1998); 42 U.S.C. § 12112(a).  Nor do Defendants contest that Plaintiff was qualified to receive the benefits and services provided by UCO as required to establish a claim for violation of the ADA or the Rehabilitation Act.  *See Robertson*, 500 F.3d at 1194-95; 42 U.S.C. § 12131(2).  There is no dispute that UCO receives federal financial assistance.

his Graphic Design II application unusually was denied without the ability to try again. *See* Pl.'s Resp. at 5-6.  Plaintiff fails to cite, much less apply, the controlling framework for a disability discrimination claim under Title II of the ADA or the Rehabilitation Act. Nor does Plaintiff mention or discuss the statutory or regulatory basis for the accommodations he asserts the University should have provided.  Plaintiff presents no relevant legal argument for why his ADA and Rehabilitation Act claims should not be dismissed.

Assessing Plaintiff's allegations, the Court finds that Plaintiff's disability discrimination allegations are insufficient to state a plausible claim for relief.[7]  Plaintiff's principal allegation is that his Graphic Design II application was denied following a department committee review and that the score his application received did not allow for a second opportunity to apply.  *See* Am. Compl. ¶¶ 17-18.  Plaintiff does not state in his Amended Complaint what Defendants should have done differently in considering his application other than awarding it a higher score.  To the extent Plaintiff would have UCO change its program requirements, such an accommodation is not actionable.  *See McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) ("Requiring the University of New Mexico to advance [the plaintiff] to the next level of the medical school program would represent a substantial, rather than a reasonable accommodation.");

---

[7] Plaintiff does not specify or discuss his theory of disability discrimination.  "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016). The Court's reading of Plaintiff's allegations is that he is pursuing a claim for failure to accommodate.

*Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 920 (10th Cir. 2013) ("To the extent that [the plaintiff] avers UNM should have changed its program requirements, such an accommodation would not be reasonable.").  Plaintiff does not allege that the department committee review was influenced by or considered his disability status, and the Court will not second-guess the academic decision of a university department committee absent some allegation of unlawful discrimination in the decision-making process.  *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); *McGuinness*, 170 F.3d at 979 ("Educational institutions are accorded deference with regard to the level of competency needed for an academic degree.").

Plaintiff also alleges that one professor, Defendant Horton, failed to comply with the University's Accommodation Letter by not providing Plaintiff with class notes and lecture slides.[8]  *See* Am. Compl. ¶ 14.  Plaintiff, however, does not cite or discuss any legal authority, statutory or otherwise, to support his claim that these materials were required to be provided in this context as a reasonable accommodation.  The provisions of the Accommodation Letter are not necessarily coextensive with the legal requirements under

---

[8] Plaintiff's allegation that he "found many professors in the Graphic Design program were unwilling to implement University mandated disability accommodations" is insufficient to state a plausible disability discrimination claim.  Am. Compl. ¶ 14; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

the ADA or Rehabilitation Act.[9]  To state a plausible claim, Plaintiff bears the burden, at minimum, of demonstrating how alleged failures violate the legal standards of the ADA or the Rehabilitation Act.

More broadly, Plaintiff alleges that his GPA at all times exceeded the standard for the graphic design program, that he achieved the Dean's Honor Roll multiple times, and that he was invited to join an honor society at UCO.  *See* Am. Compl. ¶¶ 13, 18.  Plaintiff alleges that he received passing grades in Defendant Horton's classes, s*ee id.* ¶¶ 14-15, and does not otherwise allege that Defendant Horton prevented him from continuing his graphic design studies.[10]  Without more, these two alleged shortcomings by Defendant Horton cannot support a theory of liability under the ADA and Rehabilitation Act.  *See Cunningham*, 531 F. App'x at 920 (affirming dismissal of ADA and Rehabilitation Act claims in part because "[n]otwithstanding his accommodation request to UNM, [the plaintiff] demonstrated that he did not need an accommodation to pass his medical school classes or tests").

### B. Conclusion as to Disability Discrimination Claims

Plaintiff has failed to plead facts sufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Plaintiff's unsupported assertions that the University should have done more to accommodate him are the kind of "threadbare recitals" that are insufficient to survive a

---

[9] Plaintiff does not provide or cite to the language of the Accommodation Letter.

[10] Plaintiff alleges that Defendant Johnson told him that the committee review of his graphic design application portfolio "was not about grades."  Am. Compl. ¶ 18.

motion to dismiss.  *See id.*  Because Plaintiff has not alleged facts sufficient for the Court to conclude that Plaintiff has stated a claim under Title II of the ADA, the abrogation analysis ends, and the Court need not reach the remaining steps under *Georgia*.  *See Georgia*, 546 U.S. at 159; *Guttman*, 669 F.3d at 1113.  Because Plaintiff cannot meet the requirements for abrogation, Plaintiff's ADA Title II claim is therefore dismissed without prejudice for lack of jurisdiction pursuant to Rule 12(b)(1).

The Court also concludes that Plaintiff fails to state a Rehabilitation Act claim for the same reasons discussed above.  Plaintiff's Rehabilitation Act claim is therefore dismissed without prejudice pursuant to Rule 12(b)(6).[11]

III.    *Section 1983 Claims*

A. Section 1983 Official Capacity Claim

Defendants contend that Plaintiff's 42 U.S.C. § 1983 substantive due process claim against Defendants Horton and Johnson in their official capacities must be dismissed because state officials cannot be sued in their official capacities under § 1983 for money damages.  The Court agrees.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[11] Even assuming that this Court had jurisdiction over Plaintiff's ADA Title II claim, Plaintiff has likewise failed to state a claim for violation of Title II pursuant to Rule 12(b)(6).

42 U.S.C. § 1983.

In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a suable "person" under § 1983 does not include a State or a State official sued in her official capacity for damages.  Plaintiff does not address this or present any contrary argument in his Response.

Plaintiff's § 1983 claim against Defendants Horton and Johnson in their official capacities for money damages is therefore dismissed pursuant to Rule 12(b)(6).[12]

B.  Section 1983 Individual Capacity Claim

Defendants move to dismiss Plaintiff's substantive due process claims against Defendants Johnson and Horton in their individual capacities on the grounds that (a) Plaintiff has failed to plead a substantive due process claim, and (b) Defendants Johnson and Horton are shielded from liability by the doctrine of qualified immunity.

1.  *Substantive Due Process*

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power."  *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019).  "A violation of substantive due process may arise in two ways—from (1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."  *Id.*  To succeed on a substantive due process claim, "an

---

[12] "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Will*, 491 U.S. at 71 n.10 (internal quotation marks omitted).  Plaintiff, however, does not seek injunctive relief.  *See* Am. Compl. at 18.

individual must demonstrate that the government deprived him of life, liberty, or property without due process of law." *Id.*

"When analyzing executive action, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Onyx Props. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 838 F.3d 1039, 1048-49 (10th Cir. 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "[A] plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment." *Gossett*, 245 F.3d at 1182 (citing *Ewing*, 474 U.S. at 224-25). "A plaintiff may make such a showing by evidence that the challenged decision was based on 'nonacademic or constitutionally impermissible reasons,' rather than the product of conscientious and careful deliberation." *Id.* (quoting *Ewing*, 474 U.S. at 225).

a.  Defendant Johnson

Plaintiff's substantive due process claim against Defendant Johnson, at its core, is that she and the department committee misjudged Plaintiff's fitness to progress further in the University's graphic design program. Plaintiff in various places in his complaint criticizes the committee review process in general terms as "arbitrary," "subjective," and "not an accurate reflection of Rohde's performance in the program." *See* Am. Compl. ¶¶ 17, 19-20. Plaintiff does not, however, allege any facts demonstrating that Defendant

Johnson or the department committee based the decision on any nonacademic or discriminatory reasons.

The Supreme Court instructs that judges may not override "a genuinely academic decision" "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. Plaintiff's complaint describes a standard academic process in the University's graphic design program whereby a department committee reviews student applications to approve progression to Graphic Design II. *See* Am. Compl. ¶¶ 16-19. The department committee returns a form with a score, including feedback on skills such as "critical thinking" and "craft/presentation." *Id.* This process, as alleged by Plaintiff, cannot be described as "a substantial departure from academic norms." *Ewing*, 474 U.S. at 225.

Plaintiff alleges that a student services representative told him the "Permission Not Given" score his application received was "very rare." *See* Am. Compl. ¶ 22. Accepting this allegation as true, that fact does not mean the department committee decision was a substantial departure from academic norms. To the contrary, it suggests that the "Permission Not Given" score was available to the department committee in the normal course.

Most importantly, Plaintiff has not alleged any bias or animus toward Plaintiff based on his disability (or otherwise) that may have impermissibly affected Defendant Johnson or the committee's review of his application. Plaintiff relies on *Gossett* for the proposition that "judicial deference to academic decisions loses force when, as here, the decisionmaker

is 'accused of concealing nonacademic or constitutionally impermissible reasons' for its action." *Gossett*, 245 F.3d at 1181 (quoting *Ewing*, 474 U.S. at 225). In *Gossett*, the plaintiff, a male nursing student, alleged that the female nursing instructors discriminated against him on the basis of his gender, giving him a failing score in a required class that resulted in his forced withdrawal from the nursing school program. *See id.* at 1175-80. The Tenth Circuit ruled that the plaintiff created a fact issue as to whether his withdrawal from the nursing program was motivated by impermissible gender discrimination sufficient to overcome summary judgement. *See id.* at 1182. Plaintiff here has not alleged any facts that would similarly suggest that Defendant Johnson or the department committee harbored discriminatory motive or rejected Plaintiff's application for nonacademic reasons.[13]

In his Response, Plaintiff argues that the department committee's decision was discriminatory because it was "a subjective rejection" issued on an "ad hoc and arbitrary basis." Pl.'s Resp. at 5-6. This is nothing more than an expression of disagreement with the department committee's professional judgment, and it is not a sufficient basis for a substantive due process claim against Defendant Johnson. Plaintiff's substantive due process claim against Defendant Johnson is therefore dismissed for failure to state a claim upon which relief may be granted.

### b.  Defendant Horton

To state a claim for substantive due process, a plaintiff must allege the loss of life, liberty, or property. *See Hyler*, 918 F.3d at 1115. Plaintiff here makes no such allegation

---

[13] Plaintiff criticizes Defendant Johnson's lack of familiarity with Plaintiff, noting that Defendant Johnson "had no instruction time" with Plaintiff. *See* Am. Compl. ¶ 19.

as to Defendant Horton.  While the Court recognizes that Plaintiff has a property interest in his continued enrollment at UCO, *see Gossett*, 245 F.3d at 1181, there is no connection between the allegations against Defendant Horton and Plaintiff's continued enrollment at UCO or progression within the graphic design program.  Plaintiff does not allege that Defendant Horton gave him failing grades in her classes or otherwise inhibited his ability to continue his studies.  *See* Am. Compl. ¶¶ 14-15.  Because Plaintiff has not alleged any deprivation of property by Defendant Horton, Plaintiff's substantive due process claim against Defendant Horton is dismissed.  *See* Fed. R. Civ. P. 12(b)(6).

### 2. *Qualified Immunity*

Because Plaintiff has failed to allege that Defendants Johnson and Horton violated a constitutional right, the Court need not determine whether they also would be entitled to dismissal based on qualified immunity.

## IV.  *State-Law Claims*

### A.  Breach of Contract Claim

Defendant Board moves to dismiss Plaintiff's breach of contract claim against it based on Eleventh Amendment immunity.  As discussed in Section II above, under the doctrine of sovereign immunity, embodied in the Eleventh Amendment, "nonconsenting States may not be sued by private individuals in federal court."  *Garrett*, 531 U.S. at 363. The sole exceptions to State sovereign immunity are "(1) when Congress has abrogated the states' immunity, as in legislation enacted to enforce the Fourteenth Amendment; and (2) when a state waives its immunity."  *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*,

722 F.3d 1209, 1212 (10th Cir. 2013). Only the latter exception is potentially applicable to Plaintiff's state-law claims.

"Waiver of sovereign immunity must be knowing and voluntary, and the 'test for determining whether a State has waived its immunity from federal jurisdiction is a stringent one.'" *Id.* at 1213 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). The Supreme Court has found waiver when a state "expressly consented by statute to suit in federal court," and "when it voluntarily invoked federal jurisdiction by filing suit in federal court, moving to intervene in federal-court litigation, or removing a case to federal court." *Id.* (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 308-09 (1990); *Lapides v. Bd. of Regents*, 535 U.S. 613, 619-24 (2002)). "A state can likewise enter into a contract that waives its Eleventh Amendment immunity to suits related to the contract." *Id.* "When a statute or other document purportedly waives a state's Eleventh Amendment immunity," the Court "will give effect to the waiver only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (alteration and internal quotation marks omitted).

Plaintiff argues against the application of state sovereign immunity by relying on *Hoover v. Kiowa Tribe of Oklahoma*, 909 P.2d 59, 62 (Okla. 1995),[14] and *State Board of Public Affairs v. Principal Funding Corp.*, 542 P.2d 503, 506 (Okla. 1975), for the

---

[14] Though not noted by Plaintiff, this decision has been expressly overruled by the Oklahoma Supreme Court. *See Carl E. Gungoll Expl. Joint Venture v. Kiowa Tribe of Okla.*, 975 P.2d 442, 444-45 (Okla. 1998).

proposition that Oklahoma law permits suits to enforce the terms of contracts entered into by the State.  These are both, however, Oklahoma Supreme Court cases discussing Oklahoma law, and they do not purport to authorize suits in federal court against the state for breach of contract.  *See Pettigrew*, 722 F.3d at 1214-15 (citing *State Board of Public Affairs* and noting the "unsettled question" of "whether the state could be sued in *federal* court for breach of the Agreement").

As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction."  *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).  Plaintiff argues there is an express or implied contract between Plaintiff and the University by virtue of his enrollment, and that "some of the terms of which are found [in] the UCO student Handbook and other UCO policies."  Pl.'s Resp. at 9.  Plaintiff does not cite to or provide any terms from the Handbook or UCO policies, much less direct the court to a contractual term that waives the state's Eleventh Amendment immunity.  *See Pettigrew*, 722 F.3d at 1213; *Patterson v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, No. CIV-20-355-R, 2020 WL 5666055, at *3 (W.D. Okla. Sept. 23, 2020) (dismissing breach of contract claim for lack of jurisdiction when the plaintiff did "not provide the Court with any specific contract or contractual provision, much less a provision that waived the University's immunity").  In the absence of any contract term waiving sovereign immunity, the Court concludes that Plaintiff's breach of contract claim is barred by the Eleventh Amendment.

Plaintiff also argues that the Court has jurisdiction over his breach of contract claim based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Supplemental

21

jurisdiction does not authorize district courts to exercise jurisdiction over claims against nonconsenting states, however.  *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002); *Pettigrew*, 722 F.3d at 1213.

Plaintiff's breach of contract claim is therefore dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### B.  Tortious Interference Claim

Defendants move to dismiss Plaintiff's claim for "intentional/tortious interference" against Defendants Horton and Johnson in their individual capacities for failure to state a claim.  To state a claim for tortious interference, a plaintiff must plausibly allege that (1) "[t]hat he or she had a business or contractual right that was interfered with"; (2) "[t]hat the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable"; and (3) "[t]hat damage was proximately sustained as a result of the complained interference."  *Daniels v. Union Baptist Ass'n*, 55 P.3d 1012, 1015 (Okla. 2001).

Defendants argue that Plaintiff's tortious inference claim fails because Plaintiff has not sufficiently pled the existence of a contract.  *See* Defs.' Mot at 18.  The Court agrees that Plaintiff must, at a minimum, include allegations in his complaint identifying a contractual right that was interfered with.  Plaintiff does not do so—Plaintiff does not allege any specific terms or rights under a purported contract between the University and him. To the extent Plaintiff is asserting that the Individual Defendants interfered with the general student/university relationship, Plaintiff does not allege that he was expelled or suspended

or that his status as a student in good standing at UCO was in any way affected by the actions of Defendants Johnson and Horton.[15]

Nor does Plaintiff allege facts sufficient to demonstrate that either Individual Defendant acted maliciously and wrongly.  Plaintiff relies on *Martin v. Johnson*, 975 P.2d 889, 891-92 (Okla. 1998), for the proposition that allegations of sexual harassment and retaliation are sufficient to show malicious and wrongful interference with an employment contract.  The Court sees no parallel between *Martin* and the present case, and Plaintiff offers none.  Plaintiff also relies on *Fulton v. People Lease Corp.*, 241 P.3d 255, 264-65 (Okla. Civ. App. 2010), for the proposition that Oklahoma courts recognize a tortious interference cause of action by an employee against a supervisor for sexual harassment and retaliation when the supervisor's actions were not in good faith, intentional, and "not for any legitimate purpose of the business enterprise."  The Court again sees no parallel between *Fulton* and the present case, and Plaintiff offers none.

Plaintiff has therefore failed to allege a plausible tortious interference claim against the Individual Defendants, and Plaintiff's tortious interference claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[15] Plaintiff alleges that he "continued to perform well in school at UCO following his untimely dismissal from the graphic design program" and majored in General Studies.  Am. Compl. ¶ 24.

CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 9) is GRANTED.  All claims raised in the Amended Complaint are dismissed without prejudice. A separate judgment shall be entered.

IT IS SO ORDERED this 30th day of September, 2021.


CHARLES B. GOODWIN
United States District Judge